## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| ANGELA GLODOWSKI, as the Representative of the Estate of AMANDA GLODOWSKI, Deceased, and as Next Friend of R.G., a minor, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 18-cv-151 |
| DANIEL HEKMAN, M.D., KRISTIN M. PAGELS, L.P.N., ADVANCED CORRECTIONAL HEALTHCARE, INC., WISCONSIN INJURED PATIENTS COMPENSATION FUND, TERRY JOHNSON, SHEENA LUBE, CASSI YOUNG, THOMAS WOLOSEK, and WOOD COUNTY, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT AT LAW

Now comes Plaintiff, ANGELA GLODOWSKI, as the Representative of the Estate of AMANDA GLODOWSKI, Deceased, and as Next Friend of R.G., a minor, through her undersigned counsel, and complaining against Defendants, DANIEL HEKMAN, M.D., KRISTIN M. PAGELS, L.P.N., ADVANCED CORRECTIONAL HEALTHCARE, INC., WISCONSIN INJURED PATIENTS COMPENSATION FUND, TERRY JOHNSON, SHEENA LUBE, CASSI YOUNG, THOMAS WOLOSEK, and WOOD COUNTY, states as follows:

1

<u>INTRODUCTION</u>

1.     Plaintiff brings this action against Defendants seeking redress for the violation of rights secured to Amanda Glodowski ("Amanda"), Deceased, by the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983.  Plaintiff further alleges state-law causes of action based on negligence and wrongful death, for which R.G., Amanda's minor son, is personally entitled to damages.

<u>JURISDICTION AND VENUE</u>

2.     Jurisdiction of this Court is provided by 28 U.S.C. § 1331 and 1343. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

3.     Venue is proper in this judicial district under 28 U.S.C. § 1391(a) because, all events giving rise to Plaintiff's claims occurred in this District.

<u>PARTIES</u>

4.     Plaintiff, Angela Glodowski, is Amanda's sister and R.G.'s maternal aunt.  R.G. is Amanda's minor son.

5.     At all times relevant to this Complaint, Defendant Daniel Hekman, M.D. ("Defendant Dr. Hekman") was a doctor licensed to practice medicine in the state of Wisconsin.

6.     At all times relevant to this Complaint, Defendant Kristin M. Pagels, L.P.N. ("Defendant Nurse Pagels") was a licensed practical nurse in the state of Wisconsin.

2

7.     At all times relevant to this Complaint, Defendant Advanced Correctional Healthcare, Inc. ("Defendant ACH"), contracted to provide medical care to inmates at the Wood County Jail in Wood County, Wisconsin.

8.     On information and belief, at all times relevant to this Complaint, Defendants Dr. Hekman and Nurse Pagels were employed by Defendant ACH, and pursuant to that employment provided medical care to inmates at the Wood County Jail.

9.     At all times relevant to this Complaint, Defendants Dr. Hekman and Nurse Pagels were acting in the course and scope of their employment with Defendant ACH.

10.     At all times relevant to this Complaint, Defendants Dr. Hekman and Nurse Pagels were acting under color of state law.

11.     Defendant Wisconsin Injured Patients Compensation Fund was created pursuant to Wis. Stats. § 655.27, and is liable for damages incurred as a result of the negligence of Defendant Dr. Hekman which are in excess of the limits specified in Wis. Stats. § 655.23(4).

12.     At all times relevant to this Complaint, Defendants Terry Johnson ("Defendant Johnson"), Sheena Lube ("Defendant Lube"), Cassi Young ("Defendant Young"), and Thomas Wolosek ("Defendant Wolosek") were employed by Defendant Wood County as correctional officers at the Wood County Jail.

13.     At all times relevant to this Complaint, Defendants Johnson, Lube, Young, and Wolosek were acting in the course and scope of their employment with Wood County.

14.     At all times relevant to this Complaint, Defendants Johnson, Lube, Young, and Wolosek were acting under color of state law.

15.     Defendants Dr. Hekman, Nurse Pagels, Johnson, Lube, Young, and Wolosek are sued in their individual capacities.

<u>FACTUAL ALLEGATIONS</u>

16.     On April 7, 2017, Amanda was arrested by the Marshfield Police Department for failing to pay court-ordered child support.

17.      After her arrest, Amanda was transported to the Wood County Jail.

18.     When Amanda was booked into the jail, the booking officer performed a medical screening.

19.     During the medical screening, Amanda reported that she had previously been hospitalized for attempted suicide.

20.     Amanda also reported that she abused heroin, methamphetamines, and benzodiazepines.

21.     Amanda also reported that she suffered from seizures, which she believed were caused by withdrawal from benzodiazepines.

22.     On April 8, 2017, Defendant Dr. Hekman, as the jail physician, undertook the management of Amanda's medical care and treatment.  At that time

Defendant Dr. Hekman prescribed Amanda 100 mg of Librium three times daily and 100 mg of Dilantin two times daily.

23.    Among other uses, Librium is a medication prescribed to treat anxiety.

24.    On April 13, 2017, Defendant Nurse Pagels, the jail nurse and primary liaison between Defendant Dr. Hekman and patients at the jail, observed that Amanda was having a seizure.

25.    At that time, Amanda told Defendant Nurse Pagels that "no one cares" and that she had no family or friends.

26.    On April 15, 2017, correctional staff observed Amanda having a seizure for about nine minutes.

27.    On information and belief, Defendant Dr. Hekman ordered that Amanda be taken to an outside emergency room.

28.    Amanda was taken to Riverview Hospital.  The emergency room physician, Dr. Ballard, diagnosed her as suffering from pseudo-seizures.  Dr. Ballard ordered anti-seizure medication and continuation of Librium.

29.    On April 16, 2017, correctional staff again observed Amanda suffering from a seizure, during which she banged her head against the wall.

30.    Amanda was again taken to Riverview Hospital for evaluation.

31.    Correctional Officer Johannes was present with Amanda during her evaluation, at which time Amanda was "very upset and crying."

32.    Amanda told Officer Johannes that she was upset about her repeated seizures and not knowing what was wrong with her.

5

33.     Amanda also told Officer Johannes that she had thoughts of suicide, but did not want to hurt herself.

34.     Amanda also told Officer Johannes that she had no hope, and no friends or family to turn to.

35.     At Officer Johannes's suggestion, Amanda agreed to be placed on mental health watch upon her return to the jail.

36.     Officer Johannes prepared a report memorializing her observations, to which all Defendants had access.

37.     On April 17, 2017, Defendant Nurse Pagels observed that Amanda was again suffering from a seizure.

38.     Dr. Hekman prescribed Amanda 500 mg of Kepra twice daily.  He also ordered that Amanda's Dilantin be discontinued.

39.     On April 18, 2017, Defendant Nurse Pagels again observed that Amanda was suffering from a seizure during which she repeatedly hit her head on her bunk.

40.     Defendant Dr. Hekman ordered that Amanda be taken for a neuro-consult.

41.     On April 19, 2017, Defendant Nurse Pagels observed that Amanda was upset and crying.

42.     On April 20, 2017, Amanda was transported for an outside neuro-consult with Dr. Evan K. Sandok, a board certified neurologist.

43. During Dr. Sandok's examination of Amanda, she reported a "long history of ongoing psychiatric problems," including drug addiction.

44. Amanda told Dr. Sandok that her seizures were triggered by anxiety, nervousness, and stress.

45. Amanda reported that she was previously the victim of sexual abuse, including rape.

46. Dr. Sandok noted his impression that Amanda was suffering from "significant psychiatric disease."

47. Dr. Sandok diagnosed Amanda as suffering from nonepileptogenic seizures, also known as psychogenic seizures.

48. Dr. Sandok recommended that Amanda's anti-seizure medication be discontinued, since her seizures were non-epileptic in nature.

49. Dr. Sandok further noted that the only treatment for psychogenic seizures is intensive psychiatric care, which Amanda required.

50. Dr. Sandok called and spoke with Defendant Nurse Pagels. At that time he recommended that Amanda's psychiatric issues be addressed as soon as possible, and that she would be best served by an inpatient psychiatric stay.

51. Dr. Sandok's diagnosis and plan was memorialized in his note which was provided to Defendants Dr. Hekman and Nurse Pagels.

52. Defendants Dr. Hekman and Nurse Pagels ignored Dr. Sandok's recommendation that Amanda receive emergent psychiatric care.

53.    Defendants Dr. Hekman and Nurse Pagels failed to refer Amanda for psychiatric treatment, or even for a psychiatric consult.

54.    On April 22, 2017, correctional staff again observed Amanda having a seizure, during which she hit her head on a crate by her bunk.

55.    Amanda later informed correctional staff that she wished she had hit her head harder so that her seizures would stop.

56.    On April 24, 2017, Defendant Nurse Pagels again observed Amanda having a seizure.

57.    On April 28, 2017, Amanda had a counseling session with Demaris Losinski.

58.    Amanda told Ms. Losinski that she was "broken" and needed to go to a psyche ward.

59.    Ms. Losinski noted Amanda to be "quite emotional and somewhat scattered."

60.    Ms. Losinski was sufficiently concerned about Amanda's mental state that she reported Amanda's presentation to jail staff, including Defendants Dr. Hekman and Nurse Pagels.

61.    Rather than provide Amanda with the psychiatric care that Dr. Sandok recommended, on April 30, 2017, Defendant Dr. Hekman ordered Amanda to be tapered off of Librium.

62.    Amanda submitted a health services request for mental health treatment, wherein she expressed concern that Librium was being discontinued.

Amanda wrote that Librium was all that was keeping her "sane," she needed it for her anxiety, and without it she "will go crazy."

63.    Defendants Dr. Hekman and Nurse Pagels had knowledge of Amanda's request and her reported concerns.

64.    Neither Defendants Dr. Hekman nor Nurse Pagels arranged for Amanda to see a mental health professional following her request.

65.    Not once during her almost one-month stay in the jail did Defendants Dr. Hekman or Nurse Pagels arrange for Amanda to receive psychiatric care to address her psychogenic seizures, extreme anxiety, depression, suicidal thoughts, and frequent complaints of hopelessness.

66.    On May 6, 2017, Defendant Lube observed that Amanda remained in her cell block while the other inmates went out into the yard.

67.    Amanda informed Defendant Lube that she feared another inmate in her cell block, Inmate Holt, would physically attack her.

68.    Defendant Lube discussed the situation with Inmate Holt, who expressed confusion because she had never given Amanda any cause to believe that Inmate Holt would harm her.

69.    Nevertheless, Defendant Lube transferred Inmate Holt, leaving Amanda alone in the cellblock.

70.    Later in the day, Defendants Johnson, Young, and Wolosek observed that Amanda was "crying and sobbing uncontrollably."

71.     Defendants Johnson, Young, and Wolosek knew about Amanda's history of anxiety, depression, suicide attempts, and seizures, during which Amanda had attempted self harm by hitting her own head against her bunk, the wall, and a crate by her bed.

72.     Nevertheless, after observing that Amanda was "crying and sobbing uncontrollably," Defendants Johnson, Young, and Wolosek allowed Amanda to remain in a cellblock with no other inmates.

73.     Defendants Johnson, Young, and Wolosek did not order that Amanda be placed on suicide watch.

74.     Defendants Johnson, Young, and Wolosek did not take any other precautions to ensure Amanda's safety, for example, by advising the Door Control officer to monitor Amanda on the cellblock surveillance camera, or ordering more frequent checks on her.

75.     Sometime between 8:04 p.m. and 9:07 p.m., Amanda committed suicide by hanging herself with a sheet tied around the bars of her cell.

### COUNT I – 42 U.S.C. § 1983

### 14th Amendment – Deliberate Indifference / Failure to Provide Medical Care

### (All Individually-Named Defendants)

76.     Plaintiff restates and re-alleges by reference paragraphs 1-75 as if fully set forth herein.

77.     In the manner more fully described above, Defendants each had subjective knowledge of Amanda's substantial and serious risk of suicide, and intentionally disregarded that risk.

78.     In the manner more fully described above, Defendants each had subjective knowledge of Amanda's serious medical condition and the need for proper medical care and treatment, and intentionally disregarded that risk.

79.     The misconduct described in this Count was objectively unreasonable and was undertaken with malice, willfulness, and/or deliberate indifference to Amanda's constitutional rights.

80.     The misconduct described in this Count shocks the conscience.

81.     As a direct and proximate result of the above-described wrongful infringement of her constitutional rights, Amanda suffered damages, including but not limited to physical pain and suffering, emotional distress, mental anguish, and death.

82.     As a further direct and proximate result of the above-described wrongful infringement of Amanda's constitutional rights, R.G. suffered damages, including loss of Amanda's financial support, as well as her society and companionship.

## COUNT II – STATE LAW

## Negligence

## (Defendants Dr. Hekman and Nurse Pagels)

83.     Plaintiff restates and re-alleges by reference paragraphs 1-82 as if fully set forth herein.

84.     In the manner more fully described above, Defendant Dr. Hekman owed Amanda a duty to exercise the degree of care, skill, and judgment that reasonable physicians would exercise under the same or similar circumstances.

85.     Defendant Dr. Hekman breached the duty he owed to Amanda by one or more of the following acts or omissions:

   a.  Failing to follow Dr. Sandok's recommendation that Amanda be provided intensive, ongoing psychiatric care;

   b.  Failing to follow Dr. Sandok's recommendation that Amanda be placed in an inpatient facility for psychiatric treatment;

   c.  Failing to order a psychiatric consult to assess Amanda's mental state;

   d.  Failing to provide Amanda with access to mental health following her request immediately preceding her death;

   e.  Failing to order that Amanda be placed on suicide watch;

   f.  Failing to order that Amanda be placed under more frequent observation; and;

12

g. Failing to otherwise address and/or prescribe any treatment to address Amanda's ongoing seizures, depression, anxiety, and suicidal thoughts.

86.    In the manner more fully described above, Defendant Nurse Pagels owed Amanda a duty to exercise the degree of care, skill, and judgment that reasonable licensed practical nurse would exercise under the same or similar circumstances.

87.    Defendant Nurse Pagels breached the duty she owed to Amanda by one or more of the following acts or omissions:

a. Failing to timely and accurately inform Defendant Dr. Hekman of Amanda's reports of anxiety, depression, hopelessness and suicidal thoughts;

b. Pursuant to Dr. Sandok's recommendation, failing to request that Defendant Dr. Hekman order intensive, ongoing psychiatric care;

c. Pursuant to Dr. Sandok's recommendation, failing to request that Defendant Dr. Hekman order that Amanda be placed in an inpatient facility for psychiatric treatment;

d. Pursuant to Dr. Sandok's recommendation, failing to request that Defendant Dr. Hekman order a psychiatric consult to assess Amanda's mental state;

e. Failing to provide Amanda with access to mental health following her request immediately preceding her death;

13

      f.  Failing to order and/or notify correctional staff that Amanda should be placed on suicide watch; and,

      g.  Failing to order and/or notify correctional staff that Amanda should be placed under more frequent observation.

88.    As a direct and proximate result of one or more of the aforementioned negligent acts and/or omissions, Amanda suffered damages, including but not limited to physical pain and suffering, emotional distress, mental anguish, and death.

## COUNT III – STATE LAW

## Wrongful Death

## (Defendants Dr. Hekman and Nurse Pagels)

89.    Plaintiff restates and re-alleges by reference paragraphs 1-88 as if fully set forth herein.

90.    As a further direct and proximate result of the above-described wrongful acts on the part of Defendants Dr. Hekman and Nurse Pagels, Amanda's minor son, R.G., suffered damages, including but not limited to loss of Amanda's financial support, as well as her society and companionship.

91.    Defendants Dr. Hekman and Nurse Pagels are liable for Plaintiff's damages pursuant to Wis. Stats. § 895.04.

## COUNT IV – STATE LAW

## Negligence / Wrongful Death – *Respondeat Superior*

## (Defendant ACH)

92.     Plaintiff restates and re-alleges by reference paragraphs 1-91 as if fully set forth herein

93.     Defendants Dr. Hekman and Nurse Pagels were acting in the course and scope of their employment at the time the breached the duty of care they owed to Amanda, proximately causing Amanda's and R.G.'s damages.

94.     Defendant ACH is vicariously liable for the negligence of Defendants Dr. Hemkam and Nurse Pagels pursuant to the doctrine of *respondeat superior*.

## COUNT V – STATE LAW

## Negligence

## (Defendants Johnson, Lube, Young, and Wolosek)

95.     Plaintiff restates and re-alleges by reference paragraphs 1-94 as if fully set forth herein.

96.     In the manner more fully described above, Defendants owed Amanda a duty of care to ensure that she had access to timely medical care and treatment and to provide for her safety as a pretrial detainee.

97.     In the manner more fully described above, Defendants breached the duty owed to Amanda by one or more of the following acts or omissions:

    a.  Failing to recognize her as having an elevated risk of suicide;

15

    b.  Failing to provide her with access to timely medical care and treatment;

    c.  Failing to notify medical staff of her extreme emotional distress;

    d.  Placing Amanda in a cell block by herself;

    e.  Failing to place Amanda on suicide watch; and,

    f.  Failing to properly monitor her.

98.    As a direct and proximate result of one or more of the aforementioned carless and negligent acts and/or omissions, Amanda suffered damages, including but not limited to physical pain and suffering, emotional distress, mental anguish, and death.

## COUNT VI – STATE LAW

## Wrongful Death

## (Defendants Johnson, Lube, Young, and Wolosek)

99.    Plaintiff restates and re-alleges by reference paragraphs 1-99 as if fully set forth herein.

100.    As a further direct and proximate result of the above-described wrongful acts on the part of Defendants Johnson, Lube, Young, and Wolosek, Amanda's minor son, R.G., suffered damages, including but not limited to loss of Amanda's financial support, as well as her society and companionship.

101.    Defendants Johnson, Lube, Young, and Wolosek are liable for Plaintiff's damages pursuant to Wis. Stats. § 895.04.

## COUNT VII – STATE LAW

## Indemnification

## (Wood County)

102.   Plaintiff restates and re-alleges by reference paragraphs 1-101 as if fully set forth herein.

103.   Pursuant to Wis. Stat. 895.46(1), Defendant Wood County is empowered and directed to pay any judgment for compensatory damages, and any associated attorneys' fees and costs, for which its employees, acting within the scope of his or her employment, are found liable.

104.   In the manner more fully described above, the misconduct by Defendants Johnson, Lube, Young, and Wolosek was committed within the course and scope of their employment.

105.   In the event that a judgment for compensatory damages is entered against any of the aforementioned Defendants, Defendant Wood County must pay the judgment as well as the associated attorneys' fees and costs.

### PRAYER FOR RELIEF

Wherefore, Plaintiff requests that this Court enter judgment in her favor and against Defendants awarding compensatory damages, attorneys' fees, costs, and such other and further relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

/s/ Kathleen T. Zellner
Kathleen T. Zellner*
Kathleen T. Zellner & Associates, P.C.
1901 Butterfield Road, Suite 650
Downers Grove, IL  60515
(630) 955.1212
attorneys@zellnerlawoffices.com
*Motion to appear pro hac vice pending

18