**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

---

**ANGELA GLODOWSKI,** as Representative of
The Estate of Amanda Glodowski, Deceased,
and as Next Friend of R.G., a minor

**Plaintiff,**

**Case No. 18-cv-151**

**v.**

**DANIEL HEKMAN, M.D., et al.**

**Defendants.**

---

**DEFENDANT KRISTIN M. PAGELS' BRIEF IN SUPPORT OF DEFENDANT'S
MOTION IN THE ALTERNATIVE TO STRIKE THE TESTIMONY OF PLAINTIFF'S
EXPERT AND BAR PLAINTIFF FROM OFFERING EVIDENCE OR TESTIMONY
FROM DR. FRED MOSS AGAINST DEFENDANT**

---

Defendant Kristin M. Pagels, LPN, by her attorneys, Leib Knott Gaynor LLC, submits the following brief in support of her motion to strike the testimony of Plaintiff's expert and bar Plaintiff from offering any evidence or testimony of Plaintiff's <u>Monell</u> expert, Dr. Fred Moss, against her pursuant to Fed. R. Civ. P. 26 and 37. This motion is filed in the alternative to Defendant's pending Motion to Amend the Scheduling Order (Doc. Nos. 129-33) and is supported by the previously filed Declaration of Douglas S. Knott (Doc. No. 131).

## I.   <u>INTRODUCTION</u>

Plaintiff is pursuing a claim that Kristin M. Pagels, LPN, was deliberately indifferent to her Decedent, Amanda Glodowski. Plaintiff did not identify a nursing expert to support that claim and counsel indicated that she would not be offering testimony of a nursing expert to support that claim. <u>See</u> Pl.'s Resp. (Doc. No. 134) at 5-7. On December 11, 2019, Plaintiff disclosed Dr. Fred Moss as a <u>Monell</u> expert to support her claim against Defendant Wood County. <u>Id.</u> at 7. Dr. Moss'

expert report did not offer any opinions regarding the performance of Nurse Pagels or the standard of care and scope of practice for a Licensed Practical Nurse, but was limited solely to the issues of Decedent Glodowski's suicidality and the policies and procedures of Defendant Wood County. Id.; Knott Decl. (Doc. No. 131); Moss Report (Doc. No. 132) (Exhibit G).

Although he was identified solely as a Monell expert and his report was limited to Monell issues, Dr. Moss offered a number of new opinions at his deposition that were highly critical of Nurse Pagels and touched on the standard of care and scope of practice for a Licensed Practical Nurse. Defendant responded to these untimely and unexpected opinions by disclosing the rebuttal report of Dr. Alfred Joshua on February 10, 2020, the date the parties had agreed to as the deadline for the Defendants' Monell expert disclosures. Nurse Pagels filed a Motion to Amend the Court's Scheduling Order (Doc. Nos. 129-33) after Plaintiff unexpectedly objected to the timeliness of Dr. Joshua's report. Plaintiff has filed an opposition to this Motion (Doc. Nos. 134-35). Nurse Pagels recognizes that the Court's preferred solution may be to bar any non-Monell opinions of Dr. Moss. As such, Nurse Pagels requests that, in the alternative to amending the scheduling order, this Court strike the testimony of Dr. Moss critical of Defendant and bar Plaintiff from introducing any evidence or testimony from Dr. Moss relating to the performance of Nurse Pagels or the standard of care and scope of practice of a Licensed Practical Nurse.

## II.    PROCEDURAL BACKGROUND

This matter is set for trial commencing June 1, 2020. See Order of November 16, 2018 (Doc. No. 39) at 5; Text Order of November 6, 2019 (Doc No. 59). Dispositive motions are fully briefed and pending. The Court initially established deadlines of July 1, 2019 and September 4, 2019, for disclosure of Plaintiff's and Defense experts, respectively. See Order of November 16, 2018 (Doc. No. 39) at 2. The parties have, with the Court's approval, sought extension of those

deadlines while maintaining the June 1, 2020 trial date and staying mindful of the Court's requirements. See Motion to Amend (Doc. No 58); Text Order of November 6, 2019 (Doc No. 59).

The parties stipulated to a proposed amendment to the scheduling order to permit (1) Plaintiff's disclosure of a Monell-related expert on December 11, 2019; (2) Defendants' disclosure of non-Monell experts on January 20, 2020; and (3) Defendants' disclosure of Monell-related experts on February 10, 2020. See Pl.'s Resp. (Doc. No. 134) at 6. Unfortunately, the proposed stipulation submitted to the Court inadvertently omitted the third deadline – Defendants' deadline for disclosure of Monell-related experts on February 10, 2020. See Proposed Amended Pretrial Order (Doc. No. 58). The stipulation was accepted by the Court. See Text Order of November 6, 2019 (Doc No. 59).

Plaintiff did not identify a nursing expert to address her claim against Nurse Pagels. On November 19, 2019, her counsel stated that she would not be offering any nursing expert against Nurse Pagels and would only be identifying an expert on Monell issues. See Pl.'s Resp. (Doc. No. 134) at 5-7. Plaintiff timely disclosed Dr. Moss as a Monell expert on December 11, 2019 in accordance with this Court's deadline. Id. at 7. In her disclosure, Plaintiff stated:

> Plaintiff will call Dr. Fred Moss to testify that during Amanda Glodowski's incarceration starting on April 7, 2017, Amanda was a substantial, serious risk of committing suicide. He will testify that the Wood County Jail's policies and procedures denied Amanda access to mental health care and treatment, increased her suicide risk, and were the moving force behind, and/or proximately caused, her death.
>
> A complete statement of Dr. Moss's opinions, and the basis and reasons for them, is attached hereto.

See Knott Decl. (Doc. No. 131), Pl.'s Suppl. Disclosures (Doc. No. 131-6) (Exhibit F) (emphasis added). Dr. Moss' expert report did not offer any opinions regarding the performance of Nurse

Pagels or the standard of care and scope of practice for a Licensed Practical Nurse.  See Pl.'s Resp. (Doc. No. 134) at 7; Moss Report (Doc. No. 132) (Exhibit G).

Dr. Moss was deposed on Friday, January 3, 2020.  See Knott Decl. (Doc. No. 131), Moss Dep. (Doc. No. 133) (Exhibit H).  Although he offered no criticism of Nurse Pagels in his report, which was to be a complete statement of his opinions, Dr. Moss repeatedly opined on her performance in the deposition, acknowledging that those opinions were recently formed. He disclosed for the first time his belief that the discontinuance of Ms. Glodowski's Librium prescription by the Jail physician, Dr. Hekman, was "central" to his opinion in the case.  Id. at 40:20-41:9.  Dr. Moss testified that, after he completed his expert report, he reviewed an article on Librium and determined that the end of her prescription was "super central to this case…." Id. at 40:20-41:16.  He further stated "that Nurse Pagels knew that going down this fast [i.e., tapering] and discontinuing [the Librium] would have a major impact on [Glodowski]." Id. at 42:3-5.

At his deposition, Dr. Moss admitted that he was not qualified to opine on the standard of care and scope of practice of a licensed practical nurse such as Nurse Pagels and acknowledged that she did not have the authority to make decisions regarding Glodowski's Librium prescription. Id. at 147:3-148:1.  Despite these admissions, he repeatedly opined that Nurse Pagels should have communicated Glodowski's requests for Librium and mental state to the Jail physician.   He testified:

> Q.    And one of the things you've talked about is some concern about prescriptions. And I'm wondering if you're placing those at the feet of Nurse Pagels from a professional point of view.
>
> A.    Yes. Nurse Pagels' responsibility between April 30th and May 2nd specifically, for instance, is as a conduit for Amanda and her and then Dr. Hekman in what to do with -- you know, she carries out the orders, it seems, of Dr. Hekman to taper the Librium. And then carries on the orders on the 4th to add fluoxetine and Buspar.
>
> ...

And then there's -- you know, so the nurse is responsible for being the conduit between what she sees and hears and, you know, being what's in between the inmate and the doctor.

Is she completely clear of the prescription?  No. Not really because she has to report what's going on in both directions. That's her job.

So I -- I don't know if I'm answering your question. It puts her really adjacent, abutted up, part of the system that creates medication delivery and choosing which and when to do that.

Id. at 148:23-150:2.  Continuing his criticism of Nurse Pagels, he later added:

Q.    Okay. So the answer is you're not critical of the decision to wean her from Librium?

A.    In a proper setting, I'm not critical of it. It would be a good drug to have her off of someday.

Q.    Okay. And the – you're critical of the manner in which it was tapered?

A.    Certainly.

Q.    And tell me what was inappropriate about the manner in which it was tapered.

A.    The manner in which it was tapered, given all the things that were in place, that she was not being heard, that she's not being dealt with, that she was not being listened to, that it was the only thing that mattered to her, that it -- that it -- it was all that was left, and that it now was going to be taken from her as the last thing, her last desperate thing to keep her alive.

And then her discussion with Nurse Pagels on the note from April 30th and -- and May 2nd, to say, you know, you -- you know not -- what's the story? How come this is happening? There's an opportunity for Nurse Pagels to bring that concern directly to Dr. Hekman as something -- given that Nurse Pagels knows – knows Amanda from previous sets as well.

I mean, she calls her by her first name after all. Amanda call--- and that doesn't mean everything. But it's clear that they know each other a little. But -- and Amanda's three -- you know, three statements in there that she knows that this will have a devastating effect on her, allows for Nurse Pagels -- creates a situation for Nurse Pagels to be responsible for carrying that information directly to Dr. Hekman as a deep clinical concern, given the level of suicidal risk that Amanda is at on this fin- -- this what turns out to be the final week of her life.

Q.    An LPN is not a psychiatrist; right?

5

A.    Definitely not.

Q.    So are you saying that Nurse Pagels should have assessed her suicide risk in the communication with Dr. Hekman?

A.    That something extremely serious is going on with Amanda? She should definitely assess that.

Id. at 152:16-154:14.

Dr. Moss also, for the first time, testified that Nurse Pagels should have responded differently to Glodowski's requests regarding the Librium.  He stated:

THE WITNESS: So what I want to get clear about this is that Amanda having read this will not think that Nurse Pagels heard her. Not at all. What Amanda will think is that Nurse Pagels tossed in the towel. And we'll get back to you about your anxiety that you've been dealing with forever, for years, with medication, whatever.

We'll get back to you. We'll get back to you about how we're going to deal with your anxiety. In the meantime, today's the day to come off of your Librium.  And we're going to extend it, although this note doesn't say that to her.

This note doesn't say that to her about the extension. It just says that Librium is not a medication you can continue. That is not listening to Amanda from Amanda's perspective. Amanda will not feel heard having read this note. That's what I want to say.

Id. at 161:2-162:11.

Dr. Moss also directly criticized the manner in which the Librium was to be discontinued and lays at least partial blame for that decision at the feet of Nurse Pagels.  He testified that:

And another possibility would be that any rightful clinician knows that tapering that fast isn't proper. And -- and without necessarily the listening of Amanda driving this, it's just that doctors and nurses don't taper 400 milligrams of Librium in three days.

And we just have that discussion. Like, that's not how this is going to go. We don't taper Librium 400 milligrams to zero in three days. We just don't do that.

Id. at 156:21-157:4.

None of the foregoing are Monell opinions and they are directly related to the standard of care and scope of practice of a Licensed Practical Nurse.  Plaintiff has dismissed any Monell claim

against Nurse Pagels' employer, Advanced Correctional Healthcare, Inc.  See Stip. of Dismissal (Doc. No. 61); Order of January 3, 2020 (Doc. No. 20).  However, Dr. Moss stated that he had reviewed materials relating to Librium prescriptions after the disclosure of his report.  Following his research, Dr. Moss had numerous new criticisms of Nurse Pagels.  These included her role as a "conduit" of information between the Jail doctor and Glodowski, her written response to Glodowski's Librium request, and for not assessing Glodowski for suicide upon receiving the request.  See Moss Dep. at 147:3-148:1, 148:23-150:2, 152:16-154:14, 161:2-162:11 (Doc. No. 133) (Exhibit H).  He also faults Nurse Pagels for the short duration of the taper of Glodowski's Librium.  Id. at 156:21-157:4.

### III.   ARGUMENT

Nurse Pagels respectfully submits that this court should strike the testimony of Dr. Moss critical of Defendant and bar Plaintiff from offering any evidence or testimony of Dr. Moss against her.

### A.  Dr. Moss' opinions are untimely and his opinions and testimony should be limited to the issues discussed in his expert report.

The parties' agreement was that plaintiff's non-Monell experts would be served prior to December 11, 2019. See Knott Decl. (Doc. No. 131), Email of November 4, 2019 (Doc. No. 131-4) (Exhibit D).  Plaintiff was permitted to identify a Monell expert on or before December 11, 2019. Id.  Dr. Moss was disclosed as Plaintiff's Monell expert, consistent with that agreement, on December 11, 2019. See Knott Decl. (Doc. No. 131), Pl.'s Suppl. Disclosures (Doc. No. 131-6) (Exhibit F).

Dr. Moss' criticisms of Nurse Pagels and the standard of care and scope of practice for a Licensed Practical Nurse did not arise until his deposition on January 3, 2020, three weeks after the deadline for Plaintiff's expert disclosures.  See Moss Dep. (Doc. No. 133) (Exhibit H).  All of

his opinions as to the performance of Nurse Pagels and the appropriateness of her actions were untimely.  Courts routinely strike new opinions that are first disclosed at an expert's deposition. See, e.g., Boyer v. Weyerhaeuser Co., 2016 U.S. Dist. LEXIS 20207, at *19-20 (W.D. Wis. 2016) (Conley, J.) (unpublished); Lexington Ins. Co. v. Horace Mann Ins. Co., 2015 U.S. Dist. LEXIS 120061, at *24-31 (N.D. Ill. 2015) (unpublished); Ruppert v. Alliant Energy Cash Balance Pension Plan, 2010 U.S. Dist. LEXIS 60872, at *5 (W.D. Wis. 2010) (Crabb, J.) (unpublished).  As such, Dr. Moss' opinions and testimony must be appropriately limited to the opinions related to Plaintiff's Monell claims and Decedent Glodowski's suicidality as disclosed in his expert report.

**B.  Nurse Pagels will be prejudiced if Dr. Moss' testimony is not limited.**

Nurse Pagels will be prejudiced if Plaintiff is allowed to use the new opinions of Dr. Moss against her.  Plaintiff opposes Defendant's motion to amend the scheduling order and allow Nurse Pagels to disclose the expert report of Dr. Joshua to rebut the untimely opinions of Dr. Moss. However, it would be manifestly unfair to prevent Nurse Pagels from offering Dr. Joshua's rebuttal while allowing Plaintiff to attack her through opinions and testimony by Dr. Moss that were not in his report and offered only at his deposition a month after Plaintiff's expert disclosure deadline. As such, this Court should strike all testimony by Dr. Moss critical of Defendant and bar Plaintiff from introducing any evidence or testimony from Dr. Moss relating to the performance of Nurse Pagels or the standard of care and scope of practice of a Licensed Practical Nurse.

IV.    <u>**CONCLUSION**</u>

Based on the foregoing, Defendant Kristin M. Pagels respectfully requests that this Court enter an order striking all testimony by Dr. Fred Moss critical of Defendant and bar Plaintiff from introducing any evidence or testimony from Dr. Moss relating to the performance of Nurse Pagels or the standard of care and scope of practice of a Licensed Practical Nurse in accordance with Federal Rule of Civil Procedure 26 and Rule 37.

Respectfully submitted,

**LEIB KNOTT GAYNOR LLC**

Dated: <u>February 24, 2020</u>          By: <u>/s/ *Douglas S. Knott*</u>
                                           Douglas S. Knott, SBN 1001600
                                           Charles R. Starnes, SBN 1113293
                                           Attorneys for Defendant Kristin M. Pagels
                                           219 N. Milwaukee Street, Suite 710
                                           Milwaukee, WI 53202
                                           Telephone: (414) 276-2102
                                           Fax: (414) 276-2140
                                           Email:  dknott@lkglaw.net
                                                     cstarnes@lkglaw.net